**ORIGINAL**

**FILED**

2012 JUN 20 P 5: 10

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
N. DIST. OF CALIF

Jonathan Shub (SBN 237708)
jshub@seegerweiss.com
**SEEGER WEISS LLP**
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Phone: (215) 564-2300
Fax (215) 851-8029

E-filing

*Attorneys for Plaintiff and all others Similarly Situated*

**BY FAX**

## UNITED STATES DISTRICT COURT
## NOTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO/OAKLAND DIVISION

THOMAS J. AHRENDTSEN,
and AARON M. LEVINE,
Individually, and on behalf of all others
similarly situated,

         Plaintiffs,

         Vs.

FACEBOOK, INC., MARK ZUCKERBERG,
DAVID A. EBERSMAN, DAVID M. SPILLANE,
MARC L. ANDREESSEN, ERSKINE B.
BOWLES, JAMES W. BREYER, DONALD E.
GRAHAM, REED HASTINGS, PETER A.
THIEL, MORGAN STANLEY & CO, LLC,
J.P. MORGAN SECURITIES LLC, GOLDMAN
SACHS & CO., MERRILL LYNCH, PIERCE
FENNER & SMITH INCORPORATED and
BARCLAYS CAPITAL, INC.,

         Defendants.

Civil Action No.

**CV 12 3212**

CRB

CLASS ACTION

**COMPLAINT**
**FOR VIOLATION OF THE**
**FEDERAL SECURITIES LAW**

DEMAND FOR JURY TRIAL

x

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of all those who purchased the

common stock of Facebook, Inc. ("Facebook") pursuant and/or traceable to the Company's May

CLASS ACTION COMPLAINT

1

18, 2012 initial public offering (the "IPO" or the "Offering") seeing to pursue remedies upon the
Securities Act of 1933 (the "Securities Act").

## JURISIDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of
the Securities Act.

3.     This Court has jurisdiction of this action pursuant to §22 of the Securities Act [15
U.S.C. §77v] and 28 U.S.C. §1331.

4.     Venue is properly laid in this District pursuant to §22 of the Securities Act and 28
U.S.C. §1391(b) and (c). The acts and conduct complained of herein occurred in substantial part
in the District and the Facebook Defendants (defined below) maintain their principal places of
business in the District.

5.     In connection with the acts and conduct alleged in this Complaint, defendants,
directly or indirectly, used the means and instrumentalities of interstate commerce, including the
mails and telephonic communications and the facilities of NASDAQ National Securities Market
("NASDAQ").

## INTRADISTRICT ASSIGNMENT

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Pursuant to
Civil L.R. 3-2, this case should be assigned to the San Francisco/Oakland Division. Facebook is
headquartered in Menlo Park, California. Additionally, Defendants conduct business in this
Division, and a substantial part of the events giving rise to the claims asserted herein occurred
within or emanated from this Division.

1

## PARTIES

2

7.     Plaintiff Thomas J. Ahrendsten purchased Facebook common stock, as set

3

forth in the certification attached hereto and incorporated herein by reference, directly in

4

the IPO, and was damaged thereby.

5

8.     Plaintiff Aaron M. Levine purchased Facebook common stock, as set forth in the

6

certification attached hereto and incorporated herein by reference, directly in the IPO, and was

7

damaged thereby.

8

9.     Defendant Facebook maintains its principal executive offices at 1601 Willow

9

Road, Menlo Park, California 94025. The Company operates as a social networking company

10

worldwide.

11

10.    Defendant Mark Zuckerberg ("Zuckerberg") is the founder of the Company and

12

was, at all relevant times, Chairman of the Board of Directors (the "Board") and Chief Executive

13

Officer of Facebook. Zuckerberg signed the Registration Statement.

14

11.    Defendant David A. Ebersman ("Ebersman") is, and was at all relevant times,

15

Chief Financial Officer ("CFO") of Facebook. Defendant Ebersman signed the Registration

16

Statement.

17

12.    Defendant David M. Spillane ("Spillane") is, and was at all relevant times Chief

18

Accounting Officer of Facebook. Defendant Spillane signed the Registration Statement.

19

13.    Defendant Erskine B. Bowles ("Bowles") is, and was at all relevant times, a

20

member of the Board of Facebook. Defendant Bowles signed the Registration Statement.

21

14.    Defendant Donald E. Graham ("Graham") is, and was at all relevant times, a

22

member of the Board of Facebook. Defendant Andreessen signed the Registration Statement.

23

24

CLASS ACTION COMPLAINT

3

15.     Defendant James W. Breyer ("Breyer") is, and was at all relevant times, a member of the Board of Facebook. Defendant Bowles signed the Registration Statement.

16.     Defendant Marc L. Andreessen ("Andreessen") is, and was at all relevant times, a member of the Board of Facebook. Defendant Andreessen the Registration Statement.

17.     Defendant Reed Hastings ("Hastings") is, and was at all relevant times, a member of the Board of Facebook. Defendant Hastings signed the Registration Statement.

18.     Defendant Peter A. Thiel ("Thiel") is, and was at all relevant times, a member of the Board of Facebook. Defendant Thiel signed the Registration Statement.

19.     The Defendants listed above (¶10-18) are collectively referred to herein as the "Individual Defendants."

20.     By reason of their management positions and their ability to make public statements in the name of Facebook, the Individual Defendants were and are controlling persons, and had the power and influence to cause (and did cause) Facebook to engage in the conduct complained of herein.

21.     Defendants Morgan Stanley & Co. LLC ("Morgan Stanley"), J.P. Morgan Securities LLC ("J.P. Morgan"), Goldman, Sachs & Co. ("Goldman Sachs"), Merrill Lynch, Pierce, Fenner & Smtih Incorporated ("Merrill Lynch") and Barclays Capital, Inc. ("Barclays") served as lead underwriters of the IPO. Morgan Stanley, J.P. Morgan, Goldman Sachs, Merrill Lynch and Barclays are collectively referred to herein as the "Underwriter Defendants."

**CLASS ACTION ALLEGATIONS**

22.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of all those who purchased the common stock of Facebook pursuant and/or traceable to the Company's IPO. Excluded from the Class are

CLASS ACTION COMPLAINT

4

defendants herein, members of the immediate family of each of the defendants, any person, firm, trust, corporation, officer, director or other individual or entity in which any defendant has a controlling interest or which is related to or affiliated with any of the defendants, and the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

23.     The members of the Class are so numerous that joinder of all members is impracticable. According to the Offering Documents, over 450 million shares of common stock were sold to the public pursuant to the IPO. The precise number of Class members is unknown to plaintiffs at this time but is believed to be in the thousands. All members of the Class may readily be identified from records maintained by Facebook and/or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to those customarily used in securities class actions.

24.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intend to prosecute this action vigorously.

25.     Plaintiffs' claims are typical of the claims of the other members of the Class because plaintiffs and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to defendants. Plaintiffs do not have any interests antagonistic to, or in conflict with, the Class

26.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible

for the Class members to seek redress for the wrongful conduct alleged. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

27.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

a.      whether the federal securities laws were violated by defendants' acts as alleged herein;

b.      whether the Prospectus and Registration Statement issued by defendants to the investing public in connection with the IPO negligently omitted and/or misrepresented material facts about Facebook and its business; and

c.      the extent of the injuries sustained by members of the Class and the appropriate measure of damages.

**SUBSTANTIVE ALLEGATIONS**

28.     Defendant Facebook operates as a social networking company worldwide. As of February 2, 2012, it had 845 million monthly users and 443 million daily users.

29.     On or about May 16, 2012, Facebook filed with the Securities and Exchange Commission ("SEC") a Form 8-1/A Registration Statement (the "Registration Statement"), for the IPO.

30.     On or about May 18, 2012, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and 421 million shares of Facebook common stock were sold to the public at $38 per share, thereby valuing the total size

of the IPO at more than $16 billion. Several Defendants, including Defendant Zuckenberg,

reaped millions of dollars in connection with the sale in the IPO.

31.     The IPO was marketed through the issuance of the Offering Documents and the

presentation of numerous "road shows" to various investment banks and potential investors that

senior Facebook executives attended along with underwriters.

32.     The Registration Statement and Prospectus contained untrue statements of

material facts, omitted to state other facts necessary to make the statements made not misleading

and were not prepared in accordance with the rules and regulations governing their preparation.

33.     With regard to the Company's expectations for the second quarter of 2012, the

Registration Statement and Prospectus stated, in pertinent part, as follows:

> Based upon or experience in the second quarter of 2012 to date, the
> trend we saw in the first quarter of [daily active users] increasing
> more rapidly than the increase in number of ads delivered has
> continued. We believe this trend is driven in part by increased
> usage of facebook on mobile devices where we have only recently
> begun showing an immaterial number of sponsors stories in News
> Feed, and in part due to certain pages having fewer ads per page as
> a result of product decisions.

34.     In describing the risks related to Facebook's business and industry, the

Registration Statement purported to warn that the Company's revenues could be negatively

affected by the rate of growth in mobile users of its site or app. The Registration Statement and

Prospectus stated in pertinent part as follows:

> ***Growth in use of Facebook through our mobile products,***
> ***where our ability to monetize is unproven, as a substitute for use***
> ***on personal computers may negatively affect our revenue and***
> ***financial results.***
>
> We had 488 million [monthly active users] who used
> facebook mobile products in March 2012. While most of our
> mobile users also access Facebook through personal computers, we

CLASS ACTION COMPLAINT

7

1    anticipate that the rate of growth in mobile usage will exceed the
     growth in usage through personal computers for the foreseeable
2    future, in part due to our focus on developing mobile products to
     encourage mobile usage of Facebook. We have historically not
3    shown ads to users accessing Facebook through mobile apps or our
     mobile website. In March 2012, we began to include sponsored
     stories in users' mobile News Feeds. However, we do not
4    currently directly generate any meaningful revenue from the use of
     Facebook mobile products, and our ability to do so successfully is
5    unproven. We believe this increased usage of Facebook on mobile
     devices has contributed to the recent trend of our daily active users
6    (DAUs) increasing more rapidly than the increase in the number of
     ads delivered. If users increasingly access Facebook mobile
7    products as a substitute for access through personal computers, and
     if we are unable to successfully implement monetization strategies
8    for our mobile users, or if we incur excessive expenses in this
     effort, our financial performance and ability to grow revenue
9    would be negatively affected.

10   35.    The Registration Statement and Prospectus also purported to warn investors that

11   the Company's revenues from advertising could be adversely affected by, among other things,

12   the "increased user access to and engagement with facebook" through mobile deliveries. In that

13   regard, the Registration Statement and Prospectus stated, in pertinent part, as follows:

14                *We generate a substantial majority of our revenue from
              advertising. The loss of advertisers, or reduction in spending by
15            advertisers with Facebook, could seriously harm our business.*

16                The substantial majority of our revenue is currently
              generated from third parties advertising on facebook. In 2009,
17            2010 and 2011, and the first quarter of 2011 and 2012, advertising
              accounted for 98%, 95%, 85%, 87% and 82%, respectively, of our
18            revenue. As is common in the industry, our advertisers typically
              do not have long-term advertising commitments with us. Many of
19            our advertisers spend only a relatively small portion on their
              overall advertising budget with us. In addition, advertisers may
20            view some of our products, such as sponsored stories and ads with
              social context, as experimental and unproven. Advertisers will not
21            continue to do business with us, or they will reduce the prices they
              are willing to pay to advertise with us, if we do not deliver ads and
22            other commercial content in an effective manner, or if they do not
              believe that their investment in advertising with us will generate a
23            competitive return relative to other alternatives. Our advertising

                                                              CLASS ACTION COMPLAINT
24
                                    8

revenue could be adversely affected by a number of other factors,
including:

- Decreases in user engagement, including time spent on
facebook;
- Increased user access to and engagement with facebook
through our mobile products, where we do not currently
directly generate meaningful revenue, particularly to the
extent that mobile engagement is substituted for
engagement with Facebook on personal computers where
we monetize usage by displaying ads and other commercial
content;
- Product changes or inventory management decisions we
may make that reduce the size, frequency, or relative
prominence of ads and other commercial content displayed
on facebook;
- Our inability to improve our analytics and measurement
solutions that demonstrate the value of our ads and other
commercial content;
- Decisions by advertisers to use our free products, such as
facebook Pages, instead of advertising on Facebook;
- Loss of advertising market share to our competitors;
- Adverse legal developments relating to advertising,
including legislative and regulatory developments and
developments in litigation;
- Adverse media reports or other negative publicity involving
us, our Platform developers, or other companies in our
industry;
- Our inability to create new products that sustain or increase
the value of our ads and other commercial content;
- Changes in the way online advertising is priced;
- The impact of new technologies that could block or obscure
the display of our ads and other commercial content; and
- The impact of macroeconomic conditions and conditions in
the advertising industry in general.

The occurrence of any of these or other factors could result
in a reduction in demand for our ads and other commercial content,
which may reduce the prices we receive for our ads and other
commercial content; or cause advertisers to stop advertising with
us altogether, either of which would negatively affect our revenue
and financial results.

36. The statements referenced above in ¶¶32-35 were untrue statements of material

fact. The true facts at the time of the IPO were that Facebook was then experiencing a severe

1    and pronounced reduction in revenue growth due to an increase of users on its Facebook app or

2    website through mobile devices rather than a traditional PC such that the Company told the

3    Underwriter Defendants to materially lower their revenue forecasts for 2012. And, defendants

4    failed to disclose that during the roadshow conducted in connection with the IPO, certain of the

5    Underwriter Defendants reduced their second quarter and full year 2012 performance estimates

6    for Facebook, which revisions were material information which was not shared with all

7    Facebook investors, but rather, was selectively disclosed by defendants to certain preferred

     investors and omitted from the Registration Statement and Prospectus.

8
            37.    On May 19, 2012, in an article entitled "Morgan Stanley Was A Control-Freak
9
     On Facebook IPO – And It May Have Royally Screwed Itself," *Reuters* reported that *"Facebook*
10
     *… altered its guidance for research earnings last week, during the road show, a rare and*
11
     *disruptive move."*
12
            38.    On May 22, 2012, in an article entitled "Insight: Morgan Stanley cut Facebook
13
     estimates just before IPO," *Reuters* reported that the Facebook's lead underwriters, Morgan
14
     Stanley, JP Morgan and Goldman Sachs, all cut their earnings forecasts for the Company in the
15
     middle of the IPO roadshow and that only a handful of preferred investor clients were told the
16
     news of the reduction. In that regard, the article stated, in pertinent part, as follows:
17
                        In the run-up to Facebook's $16 billion IPO, Morgan Stanley, the
18                      lead underwriter on the deal, unexpectedly delivered some
                        negative news to major clients: The bank's consumer Internet
19                      analyst, Scott Devitt, was reducing his revenue forecasts for the
                        company.
20
                        The sudden caution was very close to the huge initial public
21                      offering, and which an investor roadshow was underway, was a big
                        shock to some, said two investors who were advised of the revised
22                      forecast.

23

24                                                                    CLASS ACTION COMPLAINT

                                              10

They say it may have contributed to the weak performance of Facebook shares, which sank on Monday – their second day of trading – to end 10 percent below the IPO price. The $38 per share IPO price valued Facebook at $104 billion.

The change in Morgan Stanley's estimates came on the heels of Facebook's filing of an amended prospectus with the U.S. Securities and Exchange Commission (SEC), in which the company expressed caution about revenue growth due to a rapid shift by users to mobile devices. Mobile advertising to date is less lucrative than advertising on a desktop.

"This was done during the roadshow – I've never seen that before in 10 years," said a source at a mutual fund firm who was among those called by Morgan Stanley.

JP Morgan Chase and Goldman Sachs, which were also major underwriters on the IPO but had lesser roles than Morgan Stanley, also revised their estimates in response to Facebook's May 9 SEC filing, according to sources familiar with the situation.

Morgan Stanley declined to comment and Devitt did not return a phone message seeking comment. JP Morgan and Goldman both declined to comment.

Typically, the underwriter of an IPO wants to pain as positive a picture as possible for prospective investors. Investment bank analysts, on the other hand, are required to operate Independently of the bankers and salesmen who are marketing stocks – that was stipulated in a settlement by major banks with regulators following a scandal over tainted stock research during the dotcom boom.

The people familiar with the revised Morgan Stanley projections said Devitt cut his revenue estimate for the current second quarter significantly, and also cut his full-year 2012 revenue forecast. Devitt's precise estimates could not be immediately verified.

"That declaration freaked a lot of people out," said one of the investors.

Scott Sweet, senior managing partner at the research firm IPO Boutique, said he was also aware of the reduced estimates.

CLASS ACTION COMPLAINT

1    "They definitely lowered their numbers and there was some
     concern about that," he said. "My biggest hedge fund client told
2    me they lowered their numbers right around mid-roadshow."

3    That client, he said, still bought the issue but "flipped his
     IPO allocation and went short on the first day."

4    "VERY UNUSUAL"

5    Sweet said analysts at firms that are not underwriting IPOs
     often change forecasts at such times. However, he said it is
6    unusual for analysts at lead underwriters to make such changes so
     close to the IPO.

7    "That would be very, very unusual for a book runner to do
8    that," he said.

9    The lower revenue projection came shortly before the IPO
     was priced at $38 a share, the high end of an already upwardly
10   revised projected range of $34-$38, and before Facebook increased
     the number of shares being sold by 25 percent.

11   The much-anticipated IPO has performed far below
     expectations, with the shares barely staying above the $38 offer
12   price on their Friday debut and then plunging on Monday.

13   Companies do not make their own financial forecasts prior
     to an IPO, and underwriters are generally barred from issuing
14   recommendations on the stock until 40 days after it begins trading.
     Analysts often rely on guidance from the company in building their
15   forecasts, but companies doing IPOs are not permitted to give out
     material information that is not available to all investors.
16

17   Institutions and major clients generally enjoy quick access
     to investment bank research, while retail clients in many cases only
18   get it later. It is unclear whether Morgan Stanley only told its top
     clients about the revised view or spread the word more broadly.
19   The firm declined to comment when asked who was told about the
     research.
20
     "It is very rare to cut forecasts in the middle of the IPO
21   process," said an official with a hedge fund firm who received a
     call from Morgan Stanley about the revision.

22

23

24                                                    CLASS ACTION COMPLAINT

                                 12

39.     As of the date of the filing of this complaint, the 421 million shares of Facebook common stock sold in the IPO are trading at approximately $31 per share, or $7 per share below the price where plaintiffs and the Class purchased $16 billion worth of Facebook stock while defendants pocketed billions of dollars. Plaintiffs and the Class have suffered losses of more than $2.5 billion since the IPO.

## COUNT I

### Violations of Section 11 of the Securities Act
### Against All Defendants

40.     Plaintiffs repeat and reallege each and every allegation contained above.

41.     This Count is brought pursuant to §§11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

42.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

43.     Facebook is the registrant for the IPO. The defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

44.     As issuer of the common stock, Facebook is strictly liable to plaintiffs and the Class for the misstatements and omissions.

45.     None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

46.     Plaintiffs acquired common stock of Facebook pursuant and/or traceable to the Registration Statement.

CLASS ACTION COMPLAINT

13

47. The value of Facebook common stock has declined substantially and plaintiffs and the Class have sustained damages as a result of defendants' violations.

48. Less than one week has elapsed from the time that plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiffs filed this Complaint. Likewise, less than one week has elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiffs filed this Complaint.

## COUNT II

### Violations of Section 12(a)(2) of the Securities Act
### Against All Defendants

49. Plaintiffs repeat and reallege each and every allegation set forth above.

50. This Count is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §771(a)(2), on behalf the Class.

51. Defendants were sellers and offerors and/or solicitors of purchasers of the common stock offered pursuant to the Prospectus and Registration Statement.

52. As set forth above, the Prospectus and Registration Statement contained untrue statements of material fact, omitted to state other facts necessary to make the statements made therein not misleading, and omitted to state material facts required to be stated therein. Defendants' actions of solicitation included preparing the inaccurate and misleading Prospectus and participating in efforts to market the IPO to investors.

53. Defendants owed the purchasers of Facebook common stock, including plaintiffs and the other Class members, the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus and Registration Statement to ensure that such statements

CLASS ACTION COMPLAINT

14

1   were accurate and that they did not contain and misstatement or omission of material fact.

2   Defendants, in the exercise of reasonable care, should have known that the Prospectus and

3   Registration Statement contained misstatements and omissions of material fact.

4        54.    Plaintiffs and the other members of the Class purchased or otherwise acquired

5   Facebook common stock pursuant to the Prospectus and Registration Statement, and neither

6   plaintiffs nor the other Class members knew, or in the exercise of reasonable diligence could

7   have known, of the untruths, inaccuracies and omissions contained in the Prospectus and

    Registration Statement.

8        55.    Plaintiffs, individually and on behalf of the Class, hereby offer to tender to

9   defendants those shares of common stock that plaintiffs and the other Class members continue to

10  own, in return for the consideration paid for those shares together with interest thereon.  Class

11  members who have sold their shares are entitled to rescissory damages.

12                              **COUNT III**

13           **Violations of Section 15 of the Securities Act**
                 **Against the Individual Defendants**
14

15       56.    Plaintiffs repeat and reallege each and every allegation contained above.

16       57.    This Count is brought pursuant to §15 of the Securities Act against the Individual

17  Defendants.

18       58.    Each of the Individual Defendants was a control person of Facebook by virtue of

19  his position as a director and/or senior officer of Facebook.  The Individual Defendant each had a

20  series of direct and/or indirect business and/or personal relationships with other directors and/or

21  officers and/or major shareholders of Facebook.

22       59.    Each of the Individual Defendants was a culpable participant in the violation of

23  §11 of the Securities Act alleged in Count I above, based on their having signed the Registration

24                                              CLASS ACTION COMPLAINT

                              15

Statement and having otherwise participated in the process which allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment, as follows:

A.      declaring this action to be a plaintiff class action properly maintained pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.      awarding plaintiffs and other members of the Class damages together with interest thereon;

C.      awarding plaintiffs and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements;

D.      awarding plaintiffs and other members of the Class rescission on their §12(a)(2) claims; and

E.      awarding plaintiffs and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

DATED: June 20, 2012

SEEGER WEISS LLP

Christopher A. Seeger
Jonathan Shub
77 Water Street
26th Floor
New York, NY 10005
Phone:   212-584-0700
Fax:      212-584-0799
Email:  cseeger@seegerweiss.com

CLASS ACTION COMPLAINT

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Email: jshub@seegerweiss.com

Arnold Levin
Larry S. Berman
**LEVIN, FISHBEIN, SEDRAN
& BERMAN**
510 Walnut Street
Philadelphia, PA 19106
Phone: 215-592-1500
Fax:    215-592-4663

Richard Burke
**COMPLEX LITIGATION GROUP LLC**
513 Central Avenue
Suite 300
Highland Park, Illinois 60035
Direct: 847-433-4500 Ext. 2601
Phone: 847-433-4500
Fax:    847-433-2500

Steven N. Berk
**BERK LAW PLLC**
2002 Massachusetts Avenue NW
Washington, DC 20036
Phone: 202-232-7550
Fax:    202-232-7556

*Attorneys for the Plaintiffs*

## CERTIFICATION

1

I, _____ , ("Plaintiff") declare, as to the claims asserted under the federal
2  securities law that:

3  1.     Plaintiff has reviewed the Complaint and authorizes its filing;

4  2.     Plaintiff did not purchase the security that is the subject of this action at the direction of
Plaintiff's counsel or in order to participate in any private action.

5
3.     Plaintiff is willing to serve as a representative party on behalf of the class, either
6  individually or as part of a group, including providing testimony at deposition or trial, if
necessary. I understand that _____ is not a claim form, and that my ability to share in any
7  recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

8  4.     Plaintiff's purchase and sale transaction(s) in the Facebook, Inc. (NASDAQ: FB) security
that is the subject of this action during the Class Period is/are as follows:

9

| Type of Security (common stock, preferred option, or bond) | Number of Shares | Bought | Sold | Date | Price per share |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |

10

11

12

13  (Please list additional purchase and sale information on a separate sheet of paper, if necessary)

14  5.     Plaintiff has complete authority to bring a suit to recover for investment losses on behalf
of purchasers of the subject securities described herein (including Plaintiff, any co-workers, any
15  corporations or other entities, and/or any beneficial owners).

16  6.     During the three years prior to the date of this Certification, Plaintiff has not sought to
serve or served as a representative party for a class in an action filed under the federal securities
17  law, except as described below: _____

18  7.     Plaintiff will not accept any payment for serving as a representative party on behalf of the
class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and
19  expenses (including lost wages) directly relating to the representation of the class as ordered or
approved by the Court.

20
I declare under penalty of perjury that the foregoing is true and correct.

21
Executed this _____ day of _____, 2012.

22

23                                                              _____
Plaintiff
24  _____
CLASS ACTION COMPLAINT

## CERTIFICATION

I, THOMAS J. AHRENDSEN ("Plaintiff") declare, as to the claims asserted under the federal securities law that:

1.     Plaintiff has reviewed the Complaint and authorizes its filing;

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that this Certification is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.     Plaintiff's purchase and sale transaction(s) in the Facebook, Inc. (NASDAQ: FB) security that is the subject of this action during the Class Period is/are as follows:

| Number of Shares | Bought | Sold | Date | Price per share |
|---|---|---|---|---|
| 200 | X | | 8/18/12 | 38.00 |
| | | | | |
| | | | | |

5.     Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-workers, any corporations or other entities, and/or any beneficial owners).

6.     During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities law.

7.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

        I declare under penalty of perjury that the foregoing is true and correct.

        Executed this 7th day of June, 2012.

                                                            Thomas J. Ahrendt

## CERTIFICATION

I, Aaron Levine, ("Plaintiff") declare, as to the claims asserted under the federal securities law that:

1.      Plaintiff has reviewed the Complaint and authorizes its filing;

2.      Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary. I understand that this Certification is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.      Plaintiff's purchase and sale transaction(s) in the Facebook, Inc. (NASDAQ: FB) security that is the subject of this action during the Class Period is/are as follows:

| Number of Shares | Bought | Sold | Date | Price per share |
|---|---|---|---|---|
| 55 | $2,090.00 | | 5/17/12 | $38.00 |
| 55 | | $1,747.39 | 5/23/12 | $31.77 |
| | | | | |

5.      Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-workers, any corporations or other entities, and/or any beneficial owners).

6.      During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities law.

7.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this __13th__ day of June, 2012.